<u>NOT FOR PUBLICATION</u>                                    (Document No. 8)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| BRYAN J. SHINE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 09-4377 (RBK/KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| TD BANK FINANCIAL GROUP, ET AL., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

This matter arises out of the tumultuous employment of Plaintiff Bryan J. Shine at

Commerce Bank.  Presently before the Court is Defendants' Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. No. 8).  For the reasons

expressed below, the Motion is granted in part and denied in part.

**I.       BACKGROUND**

After Plaintiff began work for Commerce Bank (now TD Bank) in Pennsylvania, he

transferred to Virginia in June 2005.  He began training at the bank's training facility in

Alexandria.  He then worked at the Dupont Circle branch in Washington D.C. from June 24,

2005 to September 27, 2005.  Plaintiff then transferred to another branch in Alexandria, where he

worked from September 30, 2005 until his termination on July 28, 2006.

Plaintiff is a Roman Catholic, a member of the Republican party with conservative

beliefs, and a Caucasian male of Irish and Polish descent.  He also suffers from bipolar disorder. It is these characteristics that he claims led to discrimination, harassment, retaliation, and ultimately his termination from Commerce Bank.  In the epic 274-paragraph Amended Complaint, Plaintiff sets forth the chapter and verse of each and every instance of purported unlawful treatment by his co-workers and supervisors – a host of allegations that quite frankly are largely unnecessary to the disposition of the present Motion.  Thus, they are not recited here at length, but are recounted briefly below as necessary.  For purposes of background, it is sufficient to say that Plaintiff's characteristics were the impetus for the Defendants' alleged mistreatment.

This dispute came before the Court on August 26, 2009 when Plaintiff filed the original Complaint.  After Plaintiff was ordered to adequately allege subject matter jurisdiction, see Doc. No. 2, Plaintiff filed the Amended Complaint, in which he asserts ten counts:

• Count One: "Equal Rights under the law (42 U.S.C. § 1981)";

• Count Two: "Civil Action for deprivation of Rights (42 U.S.C. § 1983)";

• Count Three: "Conspiracy to interfere with and failure to prevent violations against the Civil Rights of Mr. Shine[,] 42 U.S.C. § 1985 and 1986";

• Count Four: "Damages for the intentional discrimination in employment of Mr. Shine[,] 42 U.S.C. § 1981a";

• Count Five: "Civil Action for Deprivation of Civil Rights (42 U.S.C. § 1983)";

• Count Six: "Unlawful Employment Practices and Intentional Discrimination (42 U.S.C. § 2000e-2, 2000e-3)";

• Count Seven: "Violations of Immigration law and discrimination of Mr. Shine on the basis of National Origin[,] 8 U.S.C. § 1324 et seq.[,] Unlawful Participation in Violation of the Racketeering Influenced and Corrupt Organizations Act[,] 18 U.S.C. § 1961-1968";

• Count Eight: "Violation of the Equal Pay Act of 1963";

2

• Count Nine: "Violation of Title I and Title V of the Americans with Disabilities Act of 1990";

• Count Ten: "Retaliation and Wrongful Termination by Defendants."

Amd. Compl. at ¶¶ 234-74.  Defendants filed their Motion to Dismiss on January 29, 2010.

Plaintiff responded out of time on April 5, 2010.  The Motion is now ripe for disposition.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v.

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a

motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must

separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to

show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is

a "context-specific task" that requires the court to "draw on its judicial experience and common

sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely

3

possible rather than plausible.  See id.

## III.   DISCUSSION

### A.      Counts One & Four – 42 U.S.C. § 1981

Plaintiff's first and fourth claims seek relief under 42 U.S.C. § 1981.  Liberally construed, Plaintiff alleges that "Defendants" (he does not specify who) discriminated against him and conspired to discriminate against him on the basis of "his Roman Catholic and conservative beliefs, his national origin, his race, his sex, [and on the basis of] perceived and actual disability."  Amd. Compl. at ¶ 235.  He also seems to allege that he was retaliated against for opposing discriminatory practices and for participating in an internal investigation.  Amd. Compl. at ¶¶ 235, 245, 270.

Defendants move to dismiss Counts One and Four on the basis that Plaintiff has failed to allege any facts showing that he was discriminated against on the basis of "ancestry or ethnic characteristics."  Def. br. at 8.  Defendants note that while the Amended Complaint states that Plaintiff is of Irish and Polish descent, it does not contain any allegations of discriminatory conduct on the basis of that heritage.  Id.  Plaintiff did not specifically respond to any of Defendants' arguments, but rather generally insisted that he had been subject to unlawful discrimination.  Pl. br. at 1.  The Court finds that while the bulk of Plaintiff's § 1981 claims do not state plausible claims for relief, he has stated at least two plausible claims.

Section 1981 grants all persons equal rights to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"  A cause of action under § 1981 requires a plaintiff to show three elements: "1) that he belongs to a racial minority; 2) an

4

intent to discriminate on the basis of race by the defendant, and 3) discrimination concerning one or more of the activities enumerated in § 1981."  Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 797-98 (3d Cir. 2010).  All races can seek relief under the statute.  McDonald v. Santa Fe Trail. Transp. Co., 427 U.S. 273, 295 (1976).  A § 1981 claim arising out of an employment relationship must satisfy the same basic elements as an employment discrimination claim under Title VII.  See Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999).  However, a § 1981 claim, unlike a Title VII claim, is limited to discrimination on the basis of race.  See Vuksta v. Bethlehem Steel Corp., 540 F. Supp. 1276, 1281-82 (E.D. Pa. 1982) (holding § 1981 does not prohibit discrimination on the basis of religion, sex, or national origin), aff'd, 702 F.2d 1405 (3d Cir. 1983); see also Model Civ. Jury Instr. 3d Cir. 6.0 comment (2010) ("Title VII protects against discrimination on the basis of sex, creed or color as well as race, while Section 1981 prohibits racial discrimination only.").  A party asserting a retaliation claim under § 1981 must show an underlying violation of the statute as well as satisfying the elements of a retaliation claim.  Estate of Oliva, 604 F.3d at 798 (stating retaliation elements are 1) employee engaged in protected activity, 2) employer took adverse employment action, and 3) a causal connection between the protected activity and the adverse employment action).

As an initial matter, the bulk of Plaintiff's § 1981 claims fail because they are not based on discrimination because of his race, but instead are based on discrimination because of his religion, beliefs, national origin, sex, and disability.  Those claims are unviable with this statutory vehicle.  As for the remainder of his claims, the Court can find only two possible instances of

race discrimination in the prolix 274-paragraph pleading.[1]  See Amd. Compl. at  ¶¶ 154, 209.

The remaining averments are either conclusory, see Amd. Compl. at ¶¶ 213, 220, 232, or aver

other kinds of discrimination (e.g., religion, disability).  See Amd. Compl. at ¶¶ 147, 160, 193,

199, 229.

Turning to Plaintiff's only two race discrimination claims, the Court finds them sufficient

to state a plausible claim for relief.  In paragraph 154, for example, Plaintiff avers that he was not

granted lending authority and 100 shares of stock despite a company policy that such things are

given after a customer service representative completes twenty loan applications and despite his

having completed the requisite amount.  Plaintiff alleges that other customer service

representatives of "African American descent" who handled fewer applications (only ten or

fifteen) were granted lending authority.  See Amd. Compl. at ¶ 154.  Taken as a whole and

liberally construed, Plaintiff has alleged that despite being qualified for a benefit, the Defendants

denied him that benefit while simultaneously granting it to less qualified co-workers of a

different race.  This is sufficient to raise an inference of race-based discrimination.

Likewise, paragraph 209 sufficiently states a claim for relief.  There Plaintiff alleges that

as part of his termination, he was required to close his account with the bank because two

"uncollected funds fees on his account."  Amd. Compl. at ¶ 209.  He alleges that two other

terminated employees of "African-American descent" were permitted to retain their accounts

---

[1] In paragraph 145, Plaintiff alleges that three of his colleagues of "Arab Muslin descent," "Indian Muslim descent", and of "non-white Hispanic origin" respectively were permitted to use a "career launch" website unfettered, whereas he was required to get permission.  However, in the next paragraph, he alleges that the difference in treatment was because of his religion or disability, but not his race.  See Amd. Compl. at ¶ 146.  Thus, the Court does not construe this allegation as a race-based discrimination challenge.

despite having over a dozen similar infractions.  Again, as with paragraph 154, Plaintiff has

alleged that he was denied the right to continue his relationship with the bank where similarly-

situated former employees of a different race were permitted to continue.  He has raised a

plausible inference that the difference in treatment is because of race-based discrimination.

Therefore, Defendants' Motion to Dismiss Counts One and Four is denied.

**B.      Counts Two & Five – 42 U.S.C. § 1983**

In Counts Two and Five Plaintiff alleges causes of action under 42 U.S.C. § 1983.

Defendants argue that these counts should be dismissed because Plaintiff was not injured by a

person acting under the color of state law.  Def. br. at 8.  Plaintiff seemingly argues that since

"Defendants" are a federally insured financial institution, they are "agents of the federal

government" and thus state actors.  The Court disagrees.

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his

or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of
> the United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

Thus, to establish a violation of § 1983, a plaintiff must demonstrate that the challenged conduct

was committed by 1) a person acting under color of state law and 2) that the conduct deprived

him of rights, privileges, or immunities secured by the Constitution or laws of the United States.

See Piecknick v. Commw. of Pa., 36 F.3d 1250, 1255-56 (3d Cir. 1994).

The color of state law element in a section 1983 action requires that "the conduct

allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).  For the conduct to be "fairly attributable" to the State, 1) the deprivation must be caused by a) the exercise of some right or privilege created by the State or b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and 2) the defendant must be a person who may fairly be said to be a state actor, either because the person a) is a state official, b) acted together with or has obtained significant aid from state officials, or c) performed conduct otherwise chargeable to the State. See id. at 936-39.

The Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when: 1) it results from the State's exercise of "coercive power"; 2) the State provides significant encouragement, either overt or covert; 3) a private actor operates as a willful participant in joint activity with the State or its agents; 4) a nominally private entity is controlled by an agency of the State; 5) a private entity has been delegated a public function by the State; or 6) the private entity is entwined with governmental policies, or the government is entwined in its management or control.  See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001) (internal quotations and citations omitted).  A court deciding whether a particular action or course of action by a private party is governmental in character must examine several factors: 1) the extent to which the actor relies on governmental assistance and benefits; 2) whether the actor is performing a traditional public function; and 3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority.  See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621 (1991). Thus, "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private

conduct, no matter how discriminatory or wrongful,'" <u>American Mfrs. Mutual Ins. Co. v.</u>

<u>Sullivan</u>, 526 U.S. 40, 50 (1999) (quoting <u>Shelley v. Kraemer</u>, 334 U.S. 1, 13 (1948)), and state

action only exists where the conduct allegedly causing the deprivation of a federal right is "fairly

attributable to the State."   <u>Lugar</u>, 457 U.S. at 937.

In this dispute, Plaintiff has not pled any involvement by a state actor.  While he insists

that the bank's federal insurance is important, mere regulation of an entity by the government

does not transform the entity into a state actor.  <u>See</u> <u>Jackson v. Metro Edison Co.</u>, 419 U.S. 345,

350 (1974).  With banks in particular, mere participation in the federal reserve system or

involvement with the Federal Deposit Insurance Corporation does not make the bank susceptible

to a § 1983 suit.  <u>See</u> <u>Bailey v. Harleysville Nat'l Bank & Trust</u>, 188 Fed. Appx. 66, 67-68 (3d

Cir. 2006).  Thus, there is no state actor here and Plaintiff cannot sustain a cause of action under

§ 1983.[2]

Therefore, the Court must grant Defendants' Motion as to Counts Two and Five.

**C.      Count Three – 42 U.S.C. §§ 1985, 1986**

In Count Three Plaintiff alleges a cause of action under 42 U.S.C. §§ 1985, 1986.

Defendants argue that this count should be dismissed because, inter alia, Plaintiff has not alleged

a violation of his right to be free from involuntary servitude or his right to interstate travel.[3]  Def.

br. at 10.  Plaintiff did not specifically respond to Defendants' challenge.  The Court finds that

---

[2] Defendants' also insist that Plaintiff's § 1983 are time-barred.  <u>See</u> Def. br. at 9. Because there is no state actor here, the Court need not reach this alternative defense.

[3] As with the § 1983 claims, Defendants also argue that Plaintiff's § 1985 and § 1986 claims are time-barred.  <u>See</u> Def. br. at 10.  Since the Court otherwise finds that Count Three is unviable, this defense is not reached.

Plaintiff has failed to state a claim.

Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).[4]  To state a claim for violation of § 1985(3), a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose or depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983); Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).  Section 1985(3) does not create any substantive rights; rather, it is a mechanism for enforcing federal rights and privileges "defined elsewhere."  Brown v. Phillip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001). With an action against private conspirators, the Supreme Court has only recognized two rights protected by § 1985(3): the right to be free from involuntary servitude and the right to interstate travel.  Id.  Section 1986 creates liability for those with the knowledge and the power to prevent violations of § 1985 but who fail to do so.  See O'Connor v. City of Newark, 440 F.3d 125, 129 n.7 (3d Cir. 2006).

Here the Amended Complaint fails for the simple reason that Plaintiff has not alleged any colorable violation of his right to be free from involuntary servitude or the right to interstate

---

[4] Plaintiff did not specifically allege that he was seeking relief under § 1985(3), but the Court construes the Amended Complaint as seeking such relief since Plaintiff has not alleged any of the types of prohibited acts under § 1985(1) or (2).

travel.  Liberally construed, Plaintiff has alleged that Defendants conspired to violate his "civil

rights," by which he seems to mean his right to be free from discrimination on the basis of

religion, beliefs, national origin, race, sex, or disability.  See Amd. Compl. at ¶¶ 241-42.  A

conspiracy to violate those rights is insufficient to form the basis of a cause of action under §

1985 and § 1986 against private litigants.

Therefore, the Court must grant Defendants' Motion as to Count Three.

### D.      Counts Six & Nine – Title VII and ADA

In Counts Six and Nine, Plaintiff asserts claims under Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e-2, 2000e-3, and Titles I and V of the Americans with Disabilities Act

of 1990 ("ADA"), 42 U.S.C. §§ 12112, 12203.  Defendants initially moved to dismiss both

Counts for failure to timely file a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC").  See Def. br. at 11.  However, Defendants subsequently

withdrew that challenge.  See Def. reply at 4.  Defendants now press to dismiss all Title VII and

all ADA claims against the individual defendants (i.e., all defendants except TD Bank), asserting

that individuals cannot be held liable either statute.  See Def. br. at 13; Def. reply at 4.  Plaintiff

does not specifically oppose dismissal of the individual defendants, but maintains that he has

viable claims against TD Bank.  See Pl. br. at 2.  The Court finds that Defendants are correct.

Title VII prohibits discrimination in employment based on race, color, religion, sex, or

national origin.  Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976) (citing 42 U.S.C. §§

2000e-2, 2000e-3).  However, Title VII only prohibits an "employer" from engaging in

discrimination.  See § 2000e-2.  Thus, individual employees are not liable under the statute.

Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc);

Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (citing Sheridan).

The same conclusion is also true regarding employment discrimination claims against individuals under Title I of the ADA, and employment retaliation claims against individuals under Title V.  Title I prohibits employment discrimination by a "covered entity" against a "qualified individual."  42 U.S.C. § 12112(a).  "Covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  Alternatively, Title V prohibits a "person" from retaliating against "any individual" who has opposed an unlawful practice under the ADA or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA.  42 U.S.C. § 12203(a).

The Court's conclusion that there is no individual liability under Title I or Title V for discrimination claims arising out of an employment relationship is not without some hesitation. Indeed, the Third Circuit has not directly ruled on whether individual liability arises under either provision.  See Datto v. Harrison, 664 F. Supp. 2d 472, 486 (E.D. Pa. 2009).  In dicta it has suggested that individual liability is not available for employment discrimination under Title I. See Emerson, 296 F.3d at 189 (noting other courts of appeals have held that individuals are not liable under Titles I or II of the ADA); Koslow v. Commw. of Pa., 302 F.3d 161, 178 (3d Cir. 2002) (noting "there appears to be no individual liability for damages under Title I of the ADA"). As to Title V, the Third Circuit has not supplied even passing guidance to date.  Nevertheless, a number of other courts have held that there is no individual liability under Title V of the ADA for a retaliation claim arising out of an employment relationship, generally reasoning that Title V should be interpreted in accord with Title VII of the Civil Rights Act, which prohibits individual

liability.  See Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007); Butler v. City of Prairie

Village, Kan., 172 F.3d 736, 744 (10th Cir. 1999); Smiley v. Daimler Chrysler, 538 F. Supp. 2d

711, 719 (D. Del. 2008); Douris v. Schweiker, 229 F. Supp. 2d 391, 397 (E.D. Pa. 2002), aff'd,

100 Fed. Appx. 126 (3d Cir. 2004); Cable v. Dep't of Developmental Servs. of the State of Ca.,

973 F. Supp. 937, 943 (C.D. Cal. 1997); Stern v. Ca. State Archives, 982 F. Supp. 690, 694 (E.D.

Cal. 1997); see also Datto, 664 F. Supp. 2d at 491 (holding interpreting § 12203 to prohibit

individual claims of liability is "appropriate in employment cases because, under § 12203(c),

retaliation claims in that context apply the remedies of Title I of the ADA, which incorporates the

remedies of Title VII").  The Court is not inclined to break ranks with the Third Circuit's passing

remarks on individual liability and is inclined to adopt the logic of the decisions holding that

employment retaliation claims under Title V cannot be maintained against an individual.

Applying the above conclusions here, Plaintiff's claims in Counts Six and Nine fail as a

matter of law against all Defendants except TD Bank.  Plaintiff's claims arise out of his

employment.  See Amd. Compl. at ¶¶ 267-68.  The majority of the Defendants are mere

individual co-workers and supervisors, and not employers for purposes of Title VII or ADA

liability.  Thus, the claims against them cannot survive.

Therefore, the Court grants Defendants' Motion as to the individual Defendants and

Counts Six and Nine.

### E.        Count Seven – RICO and Immigration & Nationality Act

In Count Seven, Plaintiff seems to allege two distinct causes of action: one for

discrimination under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324b, and one

for a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18

13

U.S.C. § 1962.  Defendants contend that both claims are unviable.  As to the INA claim,

Defendants argue that Plaintiff has failed to file a charge of discrimination, and that the Act does

not set forth a private cause of action.  See Def. br. at 20.  As to the RICO claim, Defendants

insist that, among other things, Plaintiff has not alleged a cognizable claim.  See Def. br. at 16.[5]

Plaintiff did not respond specifically to Defendants' INA argument, but he did further assert that

he has a viable RICO claim since "the defendants knowing [sic] and willingly hired and harbored

illegal aliens."  See Pl. br. at 2.  The Court finds Defendants' arguments sound.

> **1.  INA**

In brief, the INA provides that it is an unfair employment practice for a person "to

discriminate against any individual . . . with respect to the hiring, or recruitment or referral for a

fee, of the individual for employment or the discharging of the individual from employment . . .

because of such individual's national origin[.]"  8 U.S.C. § 1324b.  The INA supplies a

comprehensive administrative process for filing a claim.  See § 1342b(b)-(j); Tudoriu v.

Horseshoe Casino Hammond, No. 04-294, 2006 WL 752490, at *2 (N.D. Ind. Mar. 21, 2006).  A

district court has only a few limited functions under the INA, see § 1342b(f)(2) (issuing subpoena

where party fails to obey ALJ subpoena), § 1342b(j)(1) (enforcing unappealed agency order);

neither of which permits initial review of a claim.  Thus, a litigant has no private cause of action

in a federal district court to enforce violations of § 1324b in the first instance.  Shah v. Wilco

Sys., Inc., 126 F. Supp. 2d 641, 648 (S.D.N.Y. 2000); Goel v. U.S., 62 Fed. Cl. 804, 807 (Fed.

---

[5] Defendants also argue that Plaintiff lacks standing to bring a claim since he has not alleged injury to his business or property.  See Def. br. at 15.  Because the Court agrees with Defendants' second argument that Plaintiff has not alleged sufficient predicate acts to state a claim, the Court need not reach this alternative basis for dismissal.

Cl. 2004) (citing <u>Shah</u>); <u>Tudoriu</u>, 2006 WL 752490, at *2 (citing <u>Shah</u>).  Applied here, Plaintiff

is seeking primary enforcement of the INA in this Court.  Such a cause of action is not

sustainable.

Therefore, the Court will grant Defendants' Motion as to the INA claim in Count Seven.

**2.     RICO**

The RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  A cause of action for a violation of RICO requires a plaintiff to allege four

elements: 1) conduct, 2) of an enterprise, 3) through a pattern, 4) of racketeering activity.  <u>Lum v.</u>

<u>Bank of Am.</u>, 361 F.3d 217, 223 (3d Cir. 2004).  A "pattern of racketeering activity" requires the

plaintiff to allege at least two predicate acts of racketeering.  <u>Id.</u> (citing 18 U.S.C. § 1961(5)).  As

is relevant here, violations of § 274 and § 277 of the INA suffice as RICO predicate acts.  <u>See</u> 18

U.S.C. § 1961(1)(F); <u>Zavala v. Wal-Mart Stores</u>, 393 F. Supp. 2d 295, 303 (D.N.J. 2005).

Plaintiffs' RICO claim must fail because he has done nothing more than state a

threadbare recital of the elements of a RICO cause of action.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.  In

particular, he has not pled any facts to plausibly show at least two predicate acts.  Plaintiff merely

formulaically alleges that Defendants aided, abetted, encouraged, harbored, hired, and continued

to employ two purported illegal aliens.  <u>See</u> Amd. Compl. at ¶ 258.  But by way of factual

support, Plaintiff only pleads that perhaps two employees were illegal aliens, they were employed

by TD Bank, and that TD Bank knew that they were illegal aliens.  <u>See</u> Amd. Compl. at ¶ 123.

15

This pleading in no way shows aiding, abetting, encouraging, or harboring.  See Zavala, 393 F. Supp. 2d at 306-308 (listing elements).  Moreover, it does not even meet the elements for impermissible hiring under the INA, which requires that a person knowingly hire and employ at least ten individuals with actual knowledge that they are aliens.  See 8 U.S.C. § 1324(a)(3)(A); Zavala, 393 F. Supp. 2d at 308-09.  Plaintiff has at most alleged that TD Bank knowingly employed two illegal aliens.  In sum, Plaintiff has failed to plausibly state a claim for relief.

Therefore, the Court grants Defendants' Motion as to the RICO claim in Count Seven.

### F.      Count Eight – Equal Pay Act

Count Eight alleges a violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).  Defendants argue that the claim is at most subject to a three year limitations period, and is thus untimely.[6]  See Def. br. at 21.  Plaintiff asserts that the limitations period was tolled after he filed a complaint with the EEOC on May 22, 2007.  See Pl. br. at 2.  The Court disagrees and finds the claim untimely.

In general, the EPA prohibits employers from discriminating  on the basis of sex with respect to pay.  See 29 U.S.C. § 206(d)(1).  A claim under the EPA must normally be brought within two years after the cause of action accrues, unless the claim arises out of a willful violation, in which case the claim must be asserted within three years.  29 U.S.C. § 255(a); 29 C.F.R. § 1620.33(b); see also EEOC v. State of Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1418 n.14 (3d Cir. 1989); Lentz v. Graco Inc., No. 05-3047, 2007 WL 2362607, at *3 (D.N.J. Aug. 14, 2007).  In this case, Plaintiff alleges that he was terminated on July 28, 2006,

---

[6] Defendants also raise the alternative argument that the EPA claim cannot be sustained against the individual Defendants.  See Def. br. at 23.  The Court does not reach this issue however since Defendants' limitations defense is sufficient to dispose of the claim.

which is seemingly the latest point at which he may have been discriminated against on the basis

of pay.  Even assuming that any difference in pay was the result of a willful violation (which he

has not plausibly asserted in the Amended Complaint), the latest his complaint should have been

filed was approximately July 28, 2009.  However, Plaintiff in fact filed the present suit on August

28, 2009.  See Docket entry # 1.  Thus, the EPA claims is untimely.

Notwithstanding, Plaintiff would have the Court believe that the limitations period was

tolled upon his filing of a complaint with EEOC on May 22, 2007.  See Pl. br. at 2.  Equitable

tolling stops a limitations period from running after a claim has accrued.  Podobnik v. U.S. Postal

Serv., 409 F.3d 584, 591 (3d Cir. 2005).  The Third Circuit has held that equitable tolling may

apply in three instances: 1) where the defendant has actively mislead the plaintiff regarding the

cause of action and the deception causes the non-compliance with the limitations period; 2)

where the plaintiff is in "some extraordinary way has been prevented from asserting his rights";

or 3) where the plaintiff has timely asserted a claim mistakenly in the wrong forum.  Id.; Sch.

Dist. of the City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981).  Equitable tolling

should only be applied "'sparingly,'" and the plaintiff bears the burden of proving that tolling

applies.  Podobnik, 409 F.3d at 591 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 113 (2002)).

Plaintiff's lone sentence in his opposition brief is far from sufficient to meet his burden to

invoke equitable tolling.  But even overlooking the brevity of his pro se briefing and giving him

the benefit of all doubt, the Court is not persuaded that equitable tolling applies.  No inference

whatsoever exists to support either of the first two bases for equitable tolling.  At most, perhaps

Plaintiff could hang his hat on the third exception – that he timely filed but in the wrong forum.

But there is nothing to support this exception either.

The EPA, unlike Title VII for example, does not require any kind of administrative exhaustion.  See County of Washington v. Gunther, 452 U.S. 161, 175 n.14 (1981); Lentz, 2007 WL 2362607, at *3.  The EPA and Title VII are thus distinct causes of action.  On the basis of the distinctness of two causes of action, the Supreme Court in a similar context held that the filing of an EEOC complaint under Title VII did not toll a cause of action for a claim under § 1981.  See Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 465-66 (1975); see also Chatterjee v. Philadelphia Fed'n of Teachers, 214 Fed. Appx. 201, 206 (3d Cir. 2007) (holding plaintiff's pursuit of administrative remedies for Title VII claim did not toll limitations period for §§ 1981, 1983, 1985(3) or state law claims).  On the basis of Johnson, it appears that where a party has two independent claims based on similar or identical facts, and the underlying facts are presented to the EEOC via a timely complaint, a party cannot then invoke tolling to maintain the alternative claim that need not have been exhausted.  Simply put, a party under those circumstances has not unwittingly invoked the wrong forum, but instead has inexcusably sat on his rights.  Cf. Burnett v. New York Cent. R.R. Co., 380 U.S. 424 (1965) (tolling limitations period where party timely filed action in state court and where action was later dismissed for improper venue).  Indeed, several courts that have addressed whether a timely EEOC complaint tolls a EPA claim have concluded that it does not.  See Collins v. Landmark Military Newspapers, Inc., No. 06-342, 2007 WL 2301549, at *1 n.2 (E.D. Va. Aug. 6, 2007); Manko v. Deutsche Bank, No. 02-1018, 2004 WL 574659, at *7 (S.D.N.Y. Mar. 22, 2004), aff'd, 354 Fed. Appx. 559 (2d Cir. 2009); Gehrt v. Uni. of Ill. at Urbana-Champaign Co-op Extension Serv., 974 F. Supp. 1178, 1189 (C.D. Ill. 1997); Feng v. Sandrik, 636 F. Supp. 77, 82-83 (N.D. Ill. 1986).

18

But see Nealon v. Stone, 958 F.2d 584, 593 (4th Cir. 1992).

On the basis of the above, the Court is not persuaded that equitable tolling should apply here.  Plaintiff's filing of the EEOC complaint did not toll the limitations period for his separate and distinct EPA claim.  Thus, his filing some three years plus later was untimely.

Therefore, the Court grants Defendants' Motion as to Count Eight.

**G.    Count Ten**

In Count Ten, Plaintiff alleges a cause of action for "retaliation and wrongful termination by Defendants."  Defendants move to dismiss Count Ten asserting that it is "simply repetitious" of prior counts and does "not set forth any specific law."  See Def. br. at 25.  Plaintiff did not respond to Defendants' allegations.  On the grounds on which Defendants have moved to dismiss Count Ten, the Court can only agree in part.

First, as to any claims of retaliation in Count Ten, those claims appear fully encompassed within the surviving counts of the Amended Complaint and thus are appropriately dismissed as duplicative.  Second, however, Plaintiff seemingly has alleged a cognizable claim for wrongful termination/wrongful discharge.  Under Virginia law, which seemingly would govern Count Ten, a plaintiff can allege a common law claim for wrongful discharge where the plaintiff was discharged in violation of public policy.  See Rowan v. Tractor Supply Co., 559 S.E.2d 709, 711 (Va. 2002); Bowman v. State Bank of Keysville, 331 S.E.2d 797, 801 (Va. 1985).  Plaintiff has seemingly attempted to invoke this cause of action.  See Amd. Compl. at ¶ 272.  While the Court cannot express whether Plaintiff has stated a plausible claim for relief (since that issue has not been adequately raised and briefed), the Court can express that it is not persuaded by Defendants' argument that Plaintiff has merely stated a repetitious claim.

19

Therefore, Defendants' Motion is granted as to those portions of Count Ten alleging retaliation and denied as to those portions alleging wrongful discharge.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** as to Counts Two, Three, Five, Seven, and Eight in their entirety.  The Motion is **GRANTED** as to Counts Six and Nine as against the individual Defendants, and **GRANTED** as to those portions of Count Ten alleging retaliation. The Motion is **DENIED** as to Counts One and Four in their entirety, and **DENIED** as to those portions of Count Ten alleging wrongful discharge.  An appropriate Order shall follow.


Date:___7-12-10_____                                    ___/s/ Robert B. Kugler___
                                                         ROBERT B. KUGLER
                                                         United States District Judge