**NOT FOR PUBLICATION** (Doc. No. 25, 26)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                          :
BRIAN J. SHINE,                           :
                                          :
                Plaintiff,         :    Civil No. 09-4377 (RBK/KMW)
                                          :
                v.                 :    **OPINION**
                                          :
TD BANK FINANCIAL GROUP, et al.,          :
                                          :
                Defendants.        :
_____       :

**KUGLER**, United States District Judge:

      This matter arises out of alleged employment discrimination on the basis of race, national origin, and disability by T.D. Bank, N.A. ("TD Bank"). During the pendency of litigation, the parties conducted extensive negotiations and reached an agreement. After the parties executed the settlement agreement, the Court dismissed the matter. Presently before the Court is the motion by Plaintiff Brian J. Shine to reopen the matter and to appoint pro bono counsel, (Doc. No. 25), and the motion to seal filed by Defendants, (Doc. No. 26). For the following reasons, Plaintiff's motions are **DENIED**, and Defendants' motion to seal is **DENIED**.

**I.    BACKGROUND**

      The background facts of this case are outlined in the Court's Opinion dated July 12, 2010. Therefore, the Court will provide additional facts as necessary to decide the pending motion.

      On August 29, 2009, Plaintiff filed the Amended Complaint. The Amended Complaint includes ten causes of action: (1) "Equal Rights under the law (42 U.S.C. § 1981)"; (2) "Civil

Action for deprivation of Rights (42 U.S.C. § 1983)"; (3) "Conspiracy to interfere with and failure to prevent violations against the Civil Rights of Mr. Shine[,] 42 U.S.C. § 1985 and 1986"; (4) "Damages for the intentional discrimination in employment of Mr. Shine[,] 42 U.S.C. § 1981a"; (5) "Civil Action for Deprivation of Civil Rights (42 U.S.C. § 1983)"; (6) "Unlawful Employment Practices and Intentional Discrimination (42 U.S.C. § 2000e-2, 2000e-3)"; (7) "Violations of Immigration law and discrimination of Mr. Shine on the basis of National Origin[,] 8 U.S.C. § 1324 et seq.[,] Unlawful Participation in Violation of Racketeering Influenced and Corrupt Organizations Act[,] 18 U.S.C. § 1961-1968"; (8) "Violation of the Equal Pay Act of 1963"; (9) Violation of Title I and Title VI of the Americans with Disabilities Act of 1990"; and (10) "Retaliation and Wrongful Termination by Defendants."  (Am. Compl. ¶¶ 234-74).

On January 29, 2010, Defendants moved to dismiss the Amended Complaint.  On July 12, 2010, the Court entered an Order:  (1) granting Defendants' motion to dismiss Counts Two, Three, Five, Seven, and Eight in their entirety; (2) granting Plaintiff summary judgment regarding Counts Six and Nine against the individual Defendants; and (3) granting Plaintiff summary judgment regarding the portions of Count Ten alleging unlawful retaliation.  (Doc. No. 14, at 20).  In the same Order, the Court denied Defendants' motion to dismiss Counts One and Four in their entirety, and the portions of Count Ten alleging wrongful discharge.  (Doc. No. 15).

Subsequently, the parties conducted extensive negotiations.  On October 7, 2010, by telephone, Plaintiff asked defense counsel, Christine O'Hearn, to discuss a potential settlement.  (O'Hearn Decl. ¶ 3; Ex. A).  On October 8, 2010 at 9:18 a.m., O'Hearn replied via email, informing Plaintiff that Defendants rejected his prior settlement offer, but that if he wanted to make a new settlement offer, she would relay the message to TD Bank.  (Id. ¶ 4).  On October 8,

2

2010 at 1:01 p.m., Plaintiff sent O'Hearn an email demanding "payment of $50,000.00," and reiterating that he was "interested in settlement."  (Id. ¶ 5; Ex. B).  On October 11, 2010, O'Hearn sent an email to Plaintiff rejecting his $50,000.00 offer and making a counteroffer of $2,500.00 in exchange for execution of a settlement agreement and release.  (Id. ¶ 6; Ex. C).

On October 12, 2010, Plaintiff sent an email to O'Hearn rejecting the $2,500.00 offer and making a counteroffer of $5,000.00.  Specifically, Plaintiff's email states "if [TD Bank] is willing to double the offer to $5,000.00 and refrain from pursuing legal fees and/or expenses we have a deal."  (Id. ¶ 7; Ex. D).  The same day, O'Hearn accepted Plaintiff's counteroffer via email, and sent Plaintiff the settlement agreement and release.  Paragraph 9 of the settlement agreement states:

> **ACKNOWLEDGEMENT.**  Shine acknowledges that he has read all of the terms and conditions of this Agreement, and that he has had an opportunity to discuss it with an attorney of his choosing prior to signing if he so desires.  Shine understands that by signing this Agreement and accepting the terms set forth above, he is receiving benefits to which he otherwise [sic] not be entitled. Shine understands that he is receiving such benefits as a result of entering into and complying with the terms and provisions of this Agreement.  Shine acknowledges that he is signing this Agreement voluntarily and knowingly in exchange for the Settlement Payment described herein, which she [sic] acknowledges is adequate and satisfactory.

(Id. ¶ 10; Ex. E).  O'Hearn also advised Plaintiff to review the agreement and contact her with any questions or concerns.  (Id. ¶ 8).

Plaintiff executed the agreement on October 13, 2010.  (O'Hearn Decl. Ex. G).  O'Hearn received a copy of the executed settlement agreement from Plaintiff via regular mail on October 14, 2010 at 1:00 p.m.  (O'Hearn Decl. ¶ 12).  After receiving the executed settlement agreement, O'Hearn forwarded the agreement to TD Bank for execution.  (Id. ¶ 14).

On October 15, 2010, O'Hearn received the following email that Plaintiff sent on

3

October 14:

> I changed my mind Christine . . . I'm not being bullied into silence. I'm fighting your clients for the unadultered Hell they put me through even after I requested numerous transfers.
>
> Again, where are all the cell records? Where are all the "dates and times of flatulence?"
>
> I'm not accepting this offer Christine.
>
> Where [sic] on a first name basis seeing that you had nothing to do with the horrible acts of your clients against me.
>
> Again, $50,000.00 and this whole matter is settled. Firm offer. Your clients have nothing to go after even if this or any other court beyond the American Rule.
>
> This communication I will also be sending to the judge. I'm worth far more than $5,000.00[.] Your clients put me through Hell and in the interests of Justice I hereby repeal my agreement to your client's gross and repugnant offer.

(Id. ¶ 15; Ex. I). Plaintiff sent the email on October 14 at 11:28 p.m. On October 15, 2010, O'Hearn discovered that Plaintiff also sent her the following email on October 14, 2010 at 11:40 p.m.:

> Where is this information? Hidden or destroyed by your clients? And for future reference I'm calling far more than 10 witnesses for depositions. About 150 would be a fair guess as to the customers I dealt with and the "diverse nature" of the store you your self [sic] noted in the record.
>
> Like I told Mitchell in Fall of 2006, I'll take this to the SCOTUS . . .
>
> I find you to be a most agreeable and lovely woman, Christine. We can settle for $50,000.00 or we can fight this to SCOTUS. My emails to Caroline are protected under Crawford v. Metro.

(Id. ¶ 16; Ex. J). O'Hearn responded to Plaintiff's email by advising Plaintiff that the parties settled the matter. (Id. ¶ 17; Ex. K). O'Hearn also informed Magistrate Judge Williams that the

parties executed a settlement agreement, and sought leave to file a motion to enforce the settlement agreement. (Id. ¶ 20; Ex. M). On October 22, 2010, Magistrate Judge Williams scheduled an in-person status conference for October 29, 2010.

On October 16 at 1:11 a.m., Plaintiff responded via email to O'Hearn's message, stating: "I'm not settling Christine. Your clients abused me and you know it. My civil rights were violated repeatedly. You can enforce this settlement all you want but you and I both know the money being offered is far below what I'm entitled to as a victim of their horrible actions." (Id. ¶ 18; Ex. L). On October 25, Plaintiff sent O'Hearn an email stating "The W-9 is in the mail. I'm done fighting." (Id. ¶ 22; Ex. N). Thereafter, O'Hearn received Plaintiff's W-9 form, and informed Magistrate Judge Williams that the parties settled the matter. As a result, Magistrate Judge Williams cancelled the in-person status conference. (Doc. No. 23).

On October 28, 2010, Plaintiff sent an email to O'Hearn requesting that Defendants expedite his settlement check. (O'Hearn Decl. ¶ 24; Ex. Q). Plaintiff received the settlement check and a copy of the executed settlement agreement on October 28, 2010. (O'Hearn Decl. ¶ 25; Ex. R). Plaintiff cashed the settlement check on November 1, 2010. (O'Hearn Decl. ¶ 25-26; Ex. S).

On February 22, 2010 – four months after executing the settlement agreement and cashing the settlement check – Plaintiff filed a motion to reopen the case, alleging that he entered the settlement agreement under duress. The parties submitted their respective briefs and the motion is ripe for review.

**II.     STANDARD**

A motion to reopen a case may be treated as either a motion for relief from a final judgment under Federal Rule of Civil Procedure 60(b) or a motion to reconsider under Rule

5

59(e) and Local Civil Rule 7.1(i).  Choi v. Kim, 258 F. App'x 413 (3d Cir. 2007).  In this case, because Plaintiff failed to file a motion for reconsideration within fourteen days after this Court issued an Order dismissing the matter (as required by Local Civil Rule 7.1(i)), the Court will construe Plaintiff's motion as a motion for relief from final judgment under Rule 60(b).

Rule 60(b) provides, in relevant part:  "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done."  Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir. 1978).

A motion filed pursuant to Rule 60(b) is "addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." Ross v. Meagan, 638 F.2d 646, 648 (3d Cir. 1981).  Rule 60(b), however, "does not confer upon the district courts a 'standardless residual discretionary power to set aside judgments.'" Moolenaar v. Gov't of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir. 1987).  Rather, relief

under Rule 60(b) is available only under such circumstances that the "'overriding interest in the finality and repose of judgments may properly be overcome.'" Harris v. Martin, 834 F.2d 361, 364 (3d Cir. 1987) (quoting Martinez-McBean v. Gov't of the Virgin Islands, 562 F.2d 980, 913 (3d Cir. 1977)). "The remedy provided by Rule 60(b) is 'extraordinary, and [only] special circumstances may justify granting relief under it.'" Moolenaar, 822 F.2d at 1346 (citations omitted).

### III. DISCUSSION

#### A. Plaintiff's Motion to Rescind the Settlement Agreement

The construction and enforcement of a settlement agreement in federal court is governed by state law. Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 348 (D.N.J. 1996). Under New Jersey law, a settlement agreement between two parties is a binding legal contract. Nolan by Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990) (internal citations omitted). Generally, New Jersey courts honor settlement agreements "absent a demonstration of fraud or other compelling circumstances." Id. (internal quotations omitted). Moreover, "if a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." Jennings v. Reed, 885 A.2d 482, 487 (N.J. Super. Ct. App. Div. 2005) (internal quotations omitted). However, "[b]efore vacating a settlement agreement, [New Jersey] courts require clear and convincing proof that the agreement should be vacated." Lee Ho, 577 A.2d at 472 (internal quotations omitted).

A party may seek to rescind a settlement agreement due to duress. In New Jersey, "acts or threats cannot constitute duress unless they are wrongful." Wolf v. Marlton Corp., 154 A.2d 625, 630 (N.J. Super. Ct. App. Div. 1959). However, "a threat may be wrongful even though the

7

act threatened is lawful." Id. at 630.  As the New Jersey Supreme Court explained in Miller v. Eisele, 168 A. 426 (N.J. 1933):

> Acts or threats cannot constitute duress unless they are wrongful, even though they exert such pressure as to preclude the exercise of free judgment.  But acts may be wrongful within the meaning of this rule though they are not criminal or tortious or in violation of a contractual duty.  Just as acts contracted for may be against public policy and the contract vitiated for that reason, though the law imposes no penalty for doing them, so acts that involve abuse of legal remedies or that are wrongful in a moral sense, if made use of as a means of causing fear vitiate a transaction induced by that fear, though they may not in themselves be legal wrongs.

Id. at 430 (internal quotation marks omitted).  Finally, even "[p]ressure may be considered wrongful when it is so oppressive under given circumstances as to constrain one to do what his free will would refuse."  Stanley & Fisher, P.C. v. Sisselman, 521 A.2d 872, 879 (N.J. Super. Ct. App. Div. 1987) (internal quotations omitted).

In this case, the Court finds that rescission is unnecessary because Plaintiff failed to offer clear and convincing proof that he executed the settlement agreement under duress or as a result of improper threats.  First, there is no evidence that Defendants wrongfully pressured Plaintiff to execute the settlement agreement.  In fact, the record reveals that Plaintiff executed the settlement agreement of his own volition, and attempted to pressure Defendants into signing the agreement on his terms.  Plaintiff initiated settlement negotiations with Defendants on October 7, 2010.  After rejecting an initial offer from Defendants, Plaintiff informed Defendants that he would settle the matter for $50,000.00.  Defendants rejected that offer and offered Plaintiff $2,500.  Plaintiff rejected that offer and made a counteroffer for $5,000.00.  After Defendants accepted Plaintiff's counteroffer, Plaintiff memorialized the agreement by signing the settlement agreement and release.  Plaintiff puts forth no evidence that Defendants used any coercive measures to pressure him to propose the $5,000.00 counteroffer or execute the settlement

8

agreement. Instead, the record demonstrates that the parties bargained extensively and reached an agreement based upon the strength of their respective legal positions. In fact, there is evidence that it was <u>Plaintiff</u> who attempted to pressure Defendants into entering a settlement agreement on his terms by threatening prolonged litigation and appeal. For example, Plaintiff sent Defendants the following email on October 14:

> And for future reference I'm calling far more than 10 witnesses for depositions. About 150 would be a fair guess as to the customers I dealt with and the "diverse nature" of the store you your self [sic] noted in the record.
>
> Like I told Mitchell in Fall of 2006, I'll take this to the SCOTUS . . . .

(O'Hearn Decl. ¶ 16; Ex. J).

Moreover, Plaintiff ratified the settlement agreement by requesting the settlement check in November – two weeks after he signed the settlement agreement. On October 28, Plaintiff sent O'Hearn an email requesting the settlement check. Thereafter, on November 1, 2010, Plaintiff cashed the settlement check. There is no evidence that Plaintiff cashed the $5,000.00 check under duress or threats by Defendants. Moreover, there is no evidence that Plaintiff attempted to return the check or otherwise relinquish the fruits of the negotiation. Thus, the fact that Plaintiff cashed the settlement check two weeks after entering the agreement substantially weakens his claim that he entered the agreement under duress. See <u>Mullen v. New Jersey Steel Corp.</u>, 733 F. Supp. 1534, 1548 (D.N.J. 1990) (noting that, under New Jersey law, party may ratify a contract by receiving the benefits of the contract, even if the contract was ineffective at the time of formation).

Second, Plaintiff offers no evidence that Defendants improperly pressured him into signing the settlement agreement with improper threats or intimidation. Plaintiff baldly asserts that Defendants made "threats which included intimidation and being sued for legal fees which

9

directly contradict the American Rule." (Pl.'s Mot. to Reopen Case at 1). However, once again, Plaintiff points to no evidence that Defendants improperly threatened him with legal action if he failed to enter into the settlement agreement. The only evidence that <u>may</u> support Plaintiff's theory of intimidation is the fact that defense counsel sent him an email more than two months prior to the settlement discussions, informing him that Defendants intended to pursue sanctions under Rule 11 if he refused to withdraw the Complaint. (<u>See</u> Defs.' Br. Ex. 1). That email states:

> Finally, please accept this correspondence as formal notice, pursuant to Federal Rule of Civil Procedure 11 and related statutory provisions and Rules, that TD Bank and all of the individually named defendants deem your complaint to be frivolous and without basis in law or fact. Specifically, you are hereby given notice that there was ample nondiscriminatory and non-retaliatory evidence to support all adverse employment action taken against you and there is no evidence whatsoever of any discrimination or retaliation. Therefore, if TD Bank and/or any of the individual defendants prevail in this matter, they intend to seek reimbursement for all attorneys' fees and costs incurred in defense of this matter as well as any and all sanctions available. We hereby formally demand that you withdraw your Complaint in its entirety.

(<u>Id.</u>). O'Hearn's email does not constitute evidence of impropriety because Defendants had a legal right to <u>pursue</u> attorneys' fees, costs, and sanctions.[1]  <u>See</u> <u>Lempert v. Singer</u>, 766 F. Supp. 1356, 1361 (D.V.I. 1991) (finding no duress when party "threatened" counterparty by refusing to sell property when party had legal right to do so); <u>Great Bay Hotel & Casino, Inc. v. Tose</u>, No. 91-600, 1991 WL 639131, *7 (D.N.J. Dec. 16, 1991) ("[I]nstitut[ing] or threatening to institute legal action where [a] party has a legal right to take such action does not constitute duress.")

---

[1] The Court notes that pursuant to Federal Rule of Civil Procedure 11(c), a party may move for sanctions against an opposing party when it believes that the opposing party is asserting a frivolous claim or filing a motion to "cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1), (2). Under Rule 11(c)(4), "[t]he sanction may include . . . an order directing the payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

(quoting Thelin v. Mitchell, 576 F. Supp. 1404, 1408 (N.D. Ill. 1983) (citations omitted); Garshman v. Universal Res. Holding, Inc., 641 F. Supp. 1359, 1372-73 (D.N.J. 1986), aff'd 824 F.2d 223 (3d Cir. 1987) (finding no duress when party threatened to exercise rights under contract). In other words, there is no duress when a party simply threatens to do what it has a legal right to do. See Warner-Lambert Pharmaceutical Co. v. Sylk, 471 F.2d 1137, 1144 n.24 (3d Cir. 1972) (applying New Jersey law and noting that there is no duress when a creditor threatens to bring a civil action or pursue other remedies available under contract). Because Defendants had a legal right to pursue sanctions under Federal Rule of Civil Procedure 11, including reasonable attorney's fees and expenses, Plaintiff's argument that he entered the settlement agreement under duress fails.

In sum, because Plaintiff offers no evidence that he executed the settlement agreement under duress, or as a result of improper threats or intimidation, Plaintiff's motion reopen the case (or alternatively, to rescind the settlement agreement) is denied.

### B. Plaintiff's Motion to Appoint Counsel

A plaintiff may request pro bono counsel under 28 U.S.C. § 1915(e)(1) at any point in the litigation. See Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994). In evaluating a motion to appoint counsel, the court must first examine the merits of the plaintiff's claim to determine if it has "some arguable merit in fact and law." See Tunnell v. Gardell, No. 01-115, 2003 WL 1463394, at *1 (D. Del. Mar. 14, 2003) (slip copy) (citing Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997)). That burden is satisfied if "the plaintiff has not alleged a frivolous or malicious claim and the pleadings state a prima facie case." Lasko v. Watts, 373 F. App'x 196, 200 (3d Cir. 2010) (internal quotations omitted). If the court is satisfied that the claim is "factually and legally meritorious," then it must examine

11

the following factors: (1) a plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf. See id. (citing Parham, 126 F.3d at 457-58; Tabron, 6 F.3d at 155-56, 157 n.5). Finally, the court should also consider other factors, such as the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time. See Tabron, 6 F.3d at 157-58.

In this case, the Court need not appoint pro bono counsel because Plaintiff's claims are meritless. As the previous discussion demonstrates, the parties entered into a binding settlement agreement. Plaintiff now seeks to rescind that agreement based upon allegations of duress and improper threats. However, aside from the unsupported allegations in Plaintiff's one-page notice of motion, Plaintiff offers no evidence of improper behavior on the part of Defendants. Because there is no evidence that Defendants acted improperly when they contracted with Plaintiff, Plaintiff's claim has no "arguable merit in fact and law." Tunnell, 2003 WL 1463394, at *1. Accordingly, Plaintiff's motion to appoint pro bono counsel is denied.

### C. Defendants' Motion to Seal

Local Civil Rule 5.3 governs requests to seal documents filed with the Court. Under Rule 5.3(c)(2), a party seeking to seal documents must show: (1) the nature of the materials at issue; (2) the legitimate private or public interests which warrant the relief sought; (3) the injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to relief sought is not available. In turn, any order or opinion on a motion to seal must make

findings as to those factors.  L. Civ. R. 5.3(c)(5).  Additionally, where a party moves to seal pretrial motions of a "nondiscovery nature, the moving party must make a showing sufficient to overcome a 'presumptive right of public access.'"  Leucadia v. Applied Extrusion Tech., Inc., 998 F.2d 157, 164 (3d Cir. 1993).  To overcome that presumption, a party must demonstrate that "good cause" exists for the protection of the material at issue.

Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure."  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citations omitted); see Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  A party does not establish good cause by merely providing "'broad allegations of harm, unsubstantiated by specific examples of articulated reasoning.'"  Pansy, 23 F.3d at 786 (quoting Cipollone v. Liggett Grp., 785 F.2d 1108, 1121 (3d Cir. 1986)).  To prevail, the parties must make this good cause showing with respect to each document sought to be sealed.  Id. at 786-87.

Defendants petition the Court to seal (1) the Settlement Agreement dated October 13, 2010, and (2) all documents and communications that pertain to the terms and conditions of the Settlement Agreement.  (Defs.' Br. in Supp. of Motion to Seal, at 3).  With respect to the Settlement Agreement, Defendants argue that the concessions made by the parties "could be embarrassing to the extent they are or appear to be inconsistently [sic] with publicly espoused opinions."  (Id. at 2).  Regarding the communications between the parties, Defendants argue that "[t]he disclosure of these confidential terms and conditions could reveal Defendants' negotiation strategies and would dampen Defendants' ability to negotiate effectively favorable terms brought by other disgruntled employees."  (Id.).

The Court finds that Defendants fail to meet their burden of establishing that the

Settlement Agreement, and the communications and negotiations between the parties leading up to the Settlement Agreement, should be sealed because Defendants fail to make a particularized showing that disclosure will cause "clearly defined and serious injury." Pansy, 23 F.3d at 786. Defendants seek to seal the Settlement Agreement and other documentation submitted in conjunction with Plaintiff's motion for relief from final judgment. A motion for relief from final judgment is a nondiscovery motion. Thus, there is a presumptive right to public access. In order to rebut that presumption, Defendants must make a particularized showing that disclosure will cause a clearly defined and serious injury.

Here, Defendants fail to make a particularized showing that disclosing the contents of the Settlement Agreement and the communications between the parties will cause them clearly defined and serious injury. As a threshold matter, Defendants fail to argue that a less restrictive alternative exists to sealing the Settlement Agreement. That failure alone warrants denial of Defendants' motion. See Huertas v. Galaxy Asset Mgmt., No. 09-2604, 2010 WL 936450, at *8 (D.N.J. Mar. 9, 2010) (D.N.J. Mar. 9, 2010) (denying motion to seal because party failed to explain why a less restrictive alternative was unavailable).

In addition, Defendants' argument that disclosure of the Settlement Agreement will potentially cause embarrassment because Defendants made concessions during private negotiations that "are or appear to be inconsistently [sic] with [their] publicly espoused opinions," is unpersuasive. (Defs.' Br. in Supp. of Motion to Seal, at 2). Generally, public embarrassment, without more, is not a clearly defined and serious injury. See Cipollone, 785 F.2d at 1121 ("As embarrassment is usually thought of as a nonmonetizable harm to individuals . . . to succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive

and financial position."). Here, Defendants provide no specific evidence of any financial or competitive harm they will suffer as a result of the embarrassment that may result from disclosure of the Settlement Agreement.

Finally, Defendants fail to make a particularized showing of specific harm caused by the statements and communications between the parties. Defendants broadly claim that disclosure of statements and communications between the parties during their negotiations will "dampen Defendants' ability to negotiate effectively favorable terms by other disgruntled employees." (Defs.' Br. in Supp. of Motion to Seal, at 2). However, Defendants blanket argument that disclosure will "dampen" their ability to negotiate does not satisfy the particularized harm requirement in this jurisdiction. See Pansy, 23 F.3d at 786-87 (noting that a party must provide specific allegations of harm, supported by specific examples and articulated reasoning, as to each document the party seeks to keep from disclosure). Defendants provide no particular examples of how disclosure will "dampen" their ability to negotiate effectively, or otherwise harm their business interests.

Therefore, because Defendants fail to meet their burden of providing a particularized showing of specific harm caused by disclosure of the Settlement Agreement and statements made during the negotiations between the parties, Defendants' motion to seal is denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motions to reopen the matter and to appoint pro bono counsel are **DENIED**. In addition, Defendants' motion to seal is **DENIED**. An appropriate order shall issue today.

Date: 8/2/2011                                                    /s/ Robert B. Kugler
                                                                                                 ROBERT B. KUGLER
                                                                                                 United States District Judge